# Exhibit A

electronically FILED by Superior Court of California, County of Los Angeles on 10/30/2019 07:07 PM Sherri R. Carter, Executive Officer/Clerk of Court, by J. Gonzalez, Deputy Clerk

Case 2:19-cv-10466-GW-MRW   Document Served   Filed 12/11/19   Page 2 of 29   Page ID #:5

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| | **FOR COURT USE ONLY** *(SOLO PARA USO DE LA CORTE)* |
|---|---|

**NOTICE TO DEFENDANT:** TAMARA MELLON BRAND, INC., a Delaware
*(AVISO AL DEMANDADO):* corporation; and DOES 1-10, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:** REBECCA CASTILLO, an individual
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Superior Court of California, County of Los Angeles<br>400 Civic Center Plaza<br>Pomona, California 91766 | **CASE NUMBER:** *(Número del Caso):* |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: Joseph R. Manning Jr.
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Manning Law, APC
20062 SW BIRCH STREET, Suite 200, NEWPORT BEACH, CA 92660-8860

Sherri R. Carter Executive Officer / Clerk of Court
949-200-8755

| | | | |
|---|---|---|---|
| **DATE:**<br>*(Fecha)* 10/30/2019 | Clerk, by<br>*(Secretario)* Jacqueline Gonzalez | | , Deputy<br>*(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):* Tamara Mellon Brand INC., a Delaware corporation

under: ☐ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor)
       ☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
       ☐ CCP 416.40 (association or partnership)     ☐ CCP 416.90 (authorized person)
       ☐ other *(specify):*
4. ☐ by personal delivery on *(date):* 11/14/19

[SEAL]

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Page 1 of 1

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov
Westlaw Doc & Form Builder

Assigned for all purposes to: Pomona Courthouse South, Judicial Officer: Gloria White-Brown

Joseph R. Manning, Jr., Esq. (State Bar No. 223381)
**MANNING LAW, APC**
20062 SW Birch Street, Ste. 200
Newport Beach, CA 92660
Office: (949) 200-8755
Fax: (866) 843-8308
DisabilityRights@manninglawoffice.com

Attorney for Plaintiff REBECCA CASTILLO

SUPERIOR COURT OF CALIFORNIA

IN AND FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| REBECCA CASTILLO, an individual<br><br>       Plaintiff,<br><br>v.<br><br>TAMARA MELLON BRAND, INC., a Delaware corporation; and DOES 1-10, inclusive,<br><br>       Defendants. | Case No.:<br><br>**Complaint For Damages And Injunctive Relief For:**<br><br>   1.  **VIOLATIONS OF THE UNRUH CIVIL RIGHTS ACT, CALIFORNIA CIVIL CODE § 51** *et seq.* |

Plaintiff REBECCA CASTILLO ("Plaintiff") alleges the following upon information and belief based upon personal knowledge:

## INTRODUCTION

1.     Plaintiff is a visually-impaired and legally blind person who requires screen-reading software to read website content using a computer. Plaintiff uses the terms "blind" or "visually-impaired" to refer to all people with visual impairments who meet the legal definition of blindness in that they have a visual acuity with correction of less than or equal to 20 x 200. Some blind people who meet this definition have limited vision. Others have no

**COMPLAINT**

1

1  vision.

2      2.    Plaintiff brings this civil rights action against TAMARA MELLON BRAND,

3  INC., a Delaware corporation, ("Defendant") for its failure to design, construct, maintain, and

4  operate its website (hereinafter the "Website" or "Defendant's Website" which shall refer to

5  tamaramellon.com, and any other website operated by or controlled by Defendant as well as

6  any third party content which is located on or used in connection with tamaramellon.com and

7  any other website operated by or controlled by Defendant, for the purposes described herein)

8  to be fully accessible to and independently usable by Plaintiff and other blind or visually-

9  impaired people.  Defendant's denial of full and equal access to the Website and therefore

10  denial of its products and services offered thereby and in conjunction with its brick-and-mortar

11  locations, is a violation of Plaintiff's rights under the California's Unruh Civil Rights Act

12  ("UCRA").

13      3.    The California Legislature provided a clear and statewide mandate for the

14  elimination of discrimination against individuals with disabilities when it enacted the Unruh

15  Civil Rights Act, Cal. Civ. Code § 51, *et seq.* Discrimination sought to be eliminated by the

16  UCRA includes barriers to full integration, independent living, and equal opportunity for

17  individuals with disabilities, which then necessarily includes barriers created by websites and

18  other places of public accommodation that are inaccessible to blind and visually-impaired

19  individuals.

20      4.    Because Defendant's Website is not equally, independently, or fully accessible

21  to blind and visually-impaired consumers in violation of the UCRA, Plaintiff seeks a

22  permanent injunction to cause a change in Defendant's corporate policies, practices, and

23  procedures so that Defendant's Website will become and remain accessible to blind and

24  visually-impaired consumers.

25      **JURISDICTION AND VENUE**

26      5.    This Court has subject matter jurisdiction over this action. This Court has

27  personal jurisdiction over Defendant because it conducted and continues to conduct substantial

28  business in the State of California, County of Los Angeles, and Defendant's offending Website

is available throughout California.

6.      Venue is proper in this Court because Defendant conducts substantial business in this County. Venue is also proper because a substantial portion of the conduct complained of herein occurred in this District.

## PARTIES

7.      Plaintiff, at all times relevant and as alleged herein, is a resident of California, County of Los Angeles. Plaintiff is legally blind and cannot use a computer without the assistance of screen-reading software (otherwise known as a "screen-reader").  However, Plaintiff is a proficient user of the JAWS screen-reader and uses it to access the internet. Plaintiff has visited the Website on separate occasions using the JAWS screen-reader. During Plaintiff's separate visits to Defendant's Website, Plaintiff encountered multiple access barriers which denied Plaintiff full and equal access to the facilities, goods, and services offered to the public and made available to the public on Defendant's Website. Due to the widespread access barriers Plaintiff encountered on Defendant's Website, Plaintiff has been deterred, on a regular basis, from accessing the Website.

8.      Plaintiff did not encounter, nor does she in any way base her UCRA claims alleged herein, upon the presence of any physical or architectural barrier in any public place of accommodation.

9.      Plaintiff is a tester in this litigation seeking to ensure compliance with federal and state law. *See Civil Rights Educ. and Enforcement Center v. Hospitality Props. Trust*, 867 F.3d 1093, 1096 (9th Cir. 2017).

10.     Plaintiff is also a consumer who wishes to access Defendant's goods and services.

11.     Plaintiff is being deterred from patronizing the Defendant's Website and brick-and-mortar locations on particular occasions.

12.     If informed that the Website has been made accessible within the meaning of the UCRA and the ADA, Plaintiff will return to the Website to test its accessibility within 45 days to test such a claim of compliance with the law.

13.     Plaintiff has standing to sue Defendant under the UCRA.  As the California Supreme Court explained in *Angelucci v. Century Supper Club*, 41 Cal.4th 160 (2007),"an individual plaintiff has standing under the [Unruh] Act if he or she has been the victim of the defendant's discriminatory act." *Id.* at 175.

14.     Plaintiff is informed and believes, and thereon alleges Defendant is a Delaware corporation, and has its principal place of business in Los Angeles, California.  Defendant operates brick-and-mortar locations in Los Angeles County, California. Defendant's brick-and-mortar locations constitute places of public accommodation.  Defendant's Website provides consumers with access to an array of goods, services, and information related to Defendant's brick-and-mortar locations including merchandise descriptions and prices, size measurement guide, company information, account sign-up, online purchase, career opportunities, store location information, and many other benefits.

15.     The true names and capacities of the Defendants sued herein as DOES 1 through 10, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names. Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein. Plaintiff will seek leave of Court to amend this Complaint to reflect the true names and capacities of the DOE Defendants when such identities become known.

16.     At all relevant times as alleged herein, each and every Defendant was acting as an agent and/or employee of each of the other Defendants and was acting within the course and/or scope of said agency and/or employment with the full knowledge and consent of each of the Defendants. Each of the acts and/or omissions complained of herein were alleged and made known to, and ratified by, each of the other Defendants (Defendant, together with any DOE Defendants, are collectively referred to hereinafter as "Defendant" or "Defendants").

## VISUALLY-IMPAIRED PERSONS' ACCESS TO THE INTERNET

17.     The Internet has become a significant source of information, a portal, and a tool for conducting business, doing everyday activities such as shopping, learning, banking, researching, as well as many other activities for sighted, blind and visually-impaired persons

alike. As an essential tool for many Americans, when accessible, the Internet provides individuals with disabilities great independence. Blind persons are able to access websites using keyboards in conjunction with screen access software that vocalizes the visual information found on a computer screen. This technology is known as screen-reading software. Except for legally blind individuals whose residual vision allows them to use magnification, screen-reading software is currently the only method a blind person can fully and independently access the internet.

18.     Blind and visually-impaired users of Windows computers and devices have several screen-reading software programs available to them.

19.     Job Access With Speech, otherwise known as "JAWS," is currently the most popular, separately purchased screen-reading software program available for Windows.

20.     For screen-reading software to function, the information on a website must be capable of being rendered into text. If the website content is not capable of being rendered into text, the blind or visually-impaired user is unable to access the same content available to sighted users using their keyboards because they are unable to see the screen or manipulate a mouse.

21.     Screen-reading software is currently the only method a blind or visually-impaired person may independently access the internet, websites, and other digital content.

22.     If the website content is not capable of being rendered into text, the blind or visually-impaired user is unable to access and navigate the same content on a website or mobile app that is available to sighted users.

23.     There are well-established industry adopted guidelines for making websites accessible to visually-impaired people who require screen-reading software programs. These guidelines have existed for at least several years and are successfully followed by large business entities who want to ensure their websites are accessible to all persons. The Web Accessibility Initiative ("WAI"), an initiative of the World Wide Web Consortium developed guidelines on website accessibility. Through Section 508 of the Rehabilitation Act, the federal government also promulgated website accessibility standards. These guidelines, easily found

on the Internet, recommend several basic components for making websites accessible, including, but not limited to: adding invisible Alt-text to graphics; ensuring all functions can be performed using a keyboard and not just a mouse; ensuring that image maps are accessible; and adding headings so blind and visually-impaired people can navigate websites and mobile applications just as sighted people do. Without these basic components, websites and mobile applications are inaccessible to a blind person using screen-reading software.

24.     Common barriers encountered by blind and visually-impaired persons include, but are not limited to, the following:

      a.  A text equivalent for every non-text element is not provided;

      b.  Title frames with text are not provided for identification and navigation;

      c.  Equivalent text is not provided when using scripts;

      d.  Forms with the same information and functionality as for sighted persons are not provided;

      e.  Information about the meaning and structure of content is not conveyed by more than the visual presentation of content;

      f.  Text cannot be resized without assistive technology up to 200 percent without loss of content or functionality;

      g.  If the content enforces a time limit, the user is not able to extend, adjust, or disable it;

      h.  Web pages do not have titles that describe the topic or purpose;

      i.  The purpose of each link cannot be determined from the link text alone or from the link text and its programmatically determined link context;

      j.  One or more keyboard operable user interface lacks a mode of operation where the keyboard focus indicator is discernible;

      k.  The default human language of each web page cannot be programmatically determined;

      l.  When a component receives focus, it may initiate a change in context;

      m. Changing the setting of a user interface component may automatically

cause a change of context where the user has not been advised before using the component;

n.   Labels or instructions are not provided when content requires user input;

o.   In content which is implemented by using markup languages, elements do not have complete start and end tags, elements are not nested according to their specifications, elements may contain duplicate attributes and/or any IDs are not unique;

p.   Inaccessible Portable Document Format (PDFs); and,

q.   The name and role of all User Interface elements cannot be programmatically determined; items that can be set by the user cannot be programmatically set; and/or notification of changes to these items is not available to user agents, including screen-reading software.

25.   In California and the Ninth Circuit, controlling law recognizes the viability of Unruh and Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* as amended by the ADA Amendments Act of 2008 (P.L. 110-325) (hereinafter "ADA") claims against commercial website and mobile application owners and operators with regard to the accessibility of such websites and mobile applications. *Robles v. Domino's Pizza, LLC* , 17-55504, 2019 WL 190134(9th Cir. January 15, 2019) (Holding the ADA and UCRA apply to websites and mobile applications, that imposing liability under Title III of the ADA and Unruh Act would not violate Fourteenth Amendment rights to due process, that the ADA is not impermissibly vague in this context, that regulated parties have received fair notice of their obligations since 1996, that it was error to invoke the doctrine of primary jurisdiction and finally that an order requiring compliance with WCAG 2.0 is a possible equitable remedy); *Long v. Live Nation Worldwide, Inc.*, No. C16-1961 TSZ 2018 WL 3533338 (W.D. Wash. July 23, 2018) (denying Defendant's summary judgment motion based on voluntary cessation and mootness and finding that defendant's website is subject to the accessibility regulations under the ADA as a matter of law); *Carroll v. Fedfinancial Fed. Credit Union*, 2018 WL 3212023 (E.D. Va. June 25, 2018) (denying Defendant's Motion to Dismissed based on

jurisdiction, Title III applicability, and due process arguments); *Haynes v. Hooters of Am.,*
*LLC*, 17-13170, 2018 WL 3030840 (11th Cir. June 19, 2018) (holding that a private settlement
agreement does not moot a new web access claim by a different plaintiff); *Gil v. SMG*
*Holdings,* No. 1:18-cv-20107 (S.D. Fl. May 28, 2018) (denying a motion to dismiss and
holding that mootness and voluntary cessation defenses did not apply when defendant claimed
it was already in the process of correcting the barriers on its website*); Thurston v. Midvale*
*Corporation, et al.*, Los Angeles Superior Court, Case No. BC663214 (Judge Samantha P.
Jessner) (May 17, 2018) (granting plaintiff's summary judgment motion finding "a plain
reading of the statute, as well as the [DOJ's] treatment of websites under the ADA, indicate
that Defendant's website falls within the categories of 'services, … privileges, advantages, or
accommodations of' a restaurant, which is a place of public accommodation under the
ADA.")*; Castillo v. Jo-Ann Stores, LLC,* No. 5:17-cv-20110-KBB (N.D. Ohio February 13,
2018) (denying motion to dismiss finding plaintiff has stated a cognizable website ADA claim
and has standing, plaintiff successfully alleged a nexus between defendant's website and its
brick and mortar stores, and the injunctive relief sought does not violate due process rights);
*Gathers v. 1-800-FLOWERS.com*, No. 1:17-cv-10273 (Mass. February 12, 2018) (denying a
motion to dismiss sought against ADA claims); *Robles v. Yum! Brands, Inc. d/b/a Pizza Hut*,
No. 2:16-cv-08211-ODW(SS) at *15. (C.D. Cal. Jan. 25, 2018) (Wright) (denying a motion
for summary judgment sought against ADA and California's Unruh Civil Rights Act claims)
("Pizza Hut cannot simply post a customer service phone number on its website and claim that
it is in compliance with the ADA unless it shows that a visually-impaired customer 'will not
be excluded, denied services, segregated or otherwise treated differently' from non-visually
impaired customers who are able to enjoy full access to Pizza Hut's website" [citations
omitted]); *Andrews v. Blick Art Materials, LLC*, No. 1:17-cv-00767-JBW-RLM (E.D.N.Y.
Dec. 21, 2017) (Weinstein, J.) (Memorandum and Order approving settlement of website
accessibility case in the form of judgment); *Brooke v. A-Ventures, LLC*, No. 2:17-cv-2868-
HRH at 19. (A.Z. Nov. 22, 2017) (granting declaratory judgment that defendant's website did
not comply with ADA; defendant enjoined to ensure equal access) ("[D]efendant was in

violation of the Americans with Disability Act because its hotel reservations website did not afford disabled persons equal access to defendant's public accommodation"); *Rios v. New York & Company, Inc.*, No. 2:17-cv-04676-ODW (AGr) (C.D. Cal. Nov. 16, 2017) (Wright) (denying a motion for judgment on the pleadings sought against Unruh Act claims) ("[T]he Court finds that this case is not unique, 'as federal courts have resolved effective communication claims under the ADA in a variety of contexts— including cases involving allegations of unequal access to goods, benefits, and services provided through websites.' Hobby Lobby, 2017 WL 2957736, at *7"); *Access Now, Inc. v. Blue Apron, LLC*, No. 17-cv-116-JL at 21. (C.D. N.H. November 8, 2017) (denying a motion to dismiss sought against ADA claims) ("[Plaintiffs] rely on Title III of the ADA as governing the defendant's potential liability and invoke compliance with the WCAG 2.0 AA standards as a sufficient condition, but not a necessary condition, for such compliance, and therefore as a potential remedy."); *Gorecki v. Dave & Buster's, Inc.*, No. 2:17-cv-01138-PSG-AGR (C.D. Cal. October 10, 2017) (Gutierrez, P.) (denying a motion for summary judgment sought against ADA and California's Unruh Civil Rights Act claims) ("a finding of liability regarding the Website's compliance with the ADA does not require sophisticated technical expertise beyond the ability of the Court"); *Kayla Reed v. CVS Pharmacy, Inc.*, Case No. 2:17-cv-03877-MWF-SK, at *9. (C.D. Cal. Oct. 3, 2017) (Fitzgerald) (denying a motion to dismiss sought against ADA and California's Unruh Civil Rights Act claims) ("The DOJ's position that the ADA applies to websites being clear, it is no matter that the ADA and the DOJ fail to describe exactly how any given website must be made accessible to people with visual impairments. Indeed, this is often the case with the ADA's requirements, because the ADA and its implementing regulations are intended to give public accommodations maximum flexibility in meeting the statute's requirements. This flexibility is a feature, not a bug, and certainly not a violation of due process."); *Andrews v. Blick Art Materials, LLC*, -- F. Supp. 3d --, 2017 WL 3278898, at *12, *15-*18 (E.D.N.Y. Aug. 1, 2017) (Weinstein, J.); *Gomez v. Lego Systems, Inc.*, Case 1:17-cv-21628-CMA (S.D. Fla. July 31, 2017) (denying a motion to dismiss an ADA claim alleging an inaccessible commercial website) [ECF #40]; *Thurston v. Chino Commercial Bank, N.A.*, No.

CV 17-01078 BRO (JCx), 2017 WL 3224681, at *5 (C.D. Cal. July 27, 2017) (citing *Gorecki*); *Markett v. Five Guys Enterprises LLC*, No. 1:17-cv-00788-KBF, slip op. at 4-6 [ECF #33] (S.D.N.Y. July 21, 2017); *Gorecki v. Hobby Lobby Stores, Inc.*, No. 2:17-cv-01131-JFW-SK, 2017 WL 2957736 (C.D. Cal. June 15, 2017) (Walter, J.) (denying a motion to dismiss sought against ADA and California's Unruh Civil Rights Act claims) ("[T]his is a relatively straightforward claim that Hobby Lobby failed to provide disabled individuals full and equal enjoyment of goods and services . . . by not maintaining a fully accessible website. There is nothing unique about this case, as federal courts have resolved effective communication claims under the ADA in a wide variety of contexts-- including cases involving allegations of unequal access to goods, benefits and services provided through websites."); *Gil v. Winn-Dixie Stores, Inc.*, No. 16-23020-Civ-Scola, -- F. Supp. 3d --, 2017 WL 2547242, at *7 (S.D. Fla. June 13, 2017) (finding that the defendant, a large supermarket chain, had violated the plaintiff's rights under the ADA by failing to maintain an accessible website after a non-jury trial); *Frazier v. Ameriserv Financial Bank*, Nos. 2:16-cv-01898-AJS (Lead Case), 17cv0031 [ECF #107], slip op. at 20 (W.D. Pa. Apr. 21, 2017) (denying a motion to dismiss an ADA claim alleging an inaccessible commercial website); *Frazier v. Churchill Downs Inc.*, Nos. 2:16-cv-01898-AJS (Lead Case), 2:16-cv-0007 (Member Case) [ECF #107] slip op. at 20 (W.D. Pa. Apr. 21, 2017) (same); *OmahaSteaks.com, Inc. v. Access Now, Inc., et al.*, No. 8:17-cv-00060-LSC-CRZ [ECF #9-1] (D. Neb. Apr. 17, 2017) (consent decree); *Access Now, Inc., et al. v. Omahasteaks.com, Inc.*, Nos. 2:16-cv-01898-AJS (Lead Case), 2:17-cv-00269-AJS (Member Case) [ECF #99] (W.D. Pa. Apr. 11, 2017 (same); *Gil v. Winn-Dixie Stores, Inc.*, -- F. Supp. 3d --, No. 16-23020-Civ-Scola, 2017 WL 2609330 (S.D. Fla. Mar. 15, 2017) (denying a motion for judgment on the pleadings sought against an ADA claim alleging an inaccessible commercial website); *Nat'l Ass'n of the Deaf v. Harvard Univ.*, Case 3:15-cv-30023-MGM, 2016 WL 3561622, at *12-*20 (D. Mass. Feb. 9, 2016) (Robertson, Mag. J.) (recommending the denial of a motion to dismiss or stay predicated on the primary jurisdiction doctrine), *adopted in Nat'l Ass'n of the Deaf v. Harvard Univ.*, Case 3:15-cv-30023-MGM, 2016 WL 6540446, at *1-*3 (D. Mass. Nov. 3, 2016) (Mastroianni, J.); *Nat'l Ass'n of the Deaf v.*

*Massachusetts Inst. of Tech.*, Case 3:15- cv-30024-MGM, 2016 WL 3561631, at *1 (D. Mass. Feb. 9, 2016) (Robertson, Mag. J.) (recommending the denial of a motion to dismiss or stay predicated on the primary jurisdiction doctrine), *adopted in Nat'l Ass'n of the Deaf v. Massachusetts Inst. of Tech.*, Case 3:15-cv-30024-MGM, 2016 WL 6652471, at *1 (D. Mass. Nov. 4, 2016) (Mastroianni, J.); *Edward Davis v. Orlando Wilshire Investments Ltd., et al.*, No. 5:15-cv-01738-MWF-KK, slip op. at 10 [ECF #17] (C.D. Cal. Nov. 2, 2015) (Fitzgerald, J.) (denying motion to dismiss in a website accessibility case) ("the Court concludes that the Complaint sufficiently alleges that the inaccessibility of the Website impedes the full and equal enjoyment of the Hotel."); *Sipe v. Huntington National Bank*, 15-CV-1083, Doc No. 21 (W.D. Pa. Nov. 18, 2015) (denying motion to dismiss based on claims the DOJ had not yet issued regulations governing website accessibility); *Nat'l Fed'n of the Blind v. Scribd, Inc.*, 98 F. Supp.3d 565, 576 (D. Vt. 2015) (denying a motion to dismiss an ADA claim against a commercial website operator); *James Patrick Brown v. BPS Direct, LLC, et al.*, Case No. LACV 14-04622 JAK (JEMx) slip op. at 4-7 [ECF #30] (C.D. Cal. Oct. 6, 2014) (Kronstadt, J.) (denying the defendant's motion to dismiss while relying on the *Target* decision as "persuasive", and holding "the Complaint does allege that Bass Pro Shops is a chain of brick-and-mortar stores and that BassPro.com is a website providing information about Bass Pro Shops products, offers, and locations.... [and that] a nexus could be established here through discovery."); *Penney v. Kohl's Dep't Stores, Inc., et al.*, No. 8:14-cv-01100-CJC-DFM [ECF #12] slip op. at 3 (C.D. Cal. Sept. 23, 2014) (Carney, J.) (denying a motion to dismiss and stating, "Thus, the Complaint states plausible facts that establish the requisite nexus between the challenged service and the place of public accommodation."); *National Ass'n of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196, 200 (D. Mass. 2012) (excluding web-based services would "run afoul of the purposes of the ADA and would severely frustrate Congress's intent that individuals with disabilities fully enjoy the goods, services, privileges, and advantages available indiscriminately to other members of the general public"); *id.* at 200-01 ("[T]he legislative history of the ADA makes clear that Congress intended the ADA to adapt to changes in technology.") (quoting H.R. Rep. 101-485(II), at 108 (1990)) ("[T]he Committee

intends that the types of accommodation and services provided to individuals with disabilities, under all of the titles of this bill, should keep pace with the rapidly changing technology of the times."); *Shields v. Walt Disney Parks and Resorts US, Inc.*, 279 F.R.D. 529, 559 (C.D. Cal. 2011) (rejecting as "unpersuasive" Disney's argument that "there is no accepted accessibility standard" and the argument that the DOJ has yet to determine what standards to apply to websites and stating, "The lack of a widely accepted standard for website accessibility does not preclude injunctive relief that would improve access to Defendants' websites by the visually-impaired."); *Nat'l Federation of the Blind v. Target Corp.*, 452 F. Supp. 2d 946, 953 (N.D. Cal. 2006) ("To limit the ADA to discrimination in the provision of services occurring on the premises of a public accommodation would contradict the plain language of the statute."); *id.* at 953-54 ("consistent with the plain language of the statute, no court has held that under the nexus theory a plaintiff has a cognizable claim only if the challenged service prevents physical access to a public accommodation. Further, it is clear that the purpose of the statute is broader than mere physical access—seeking to bar actions or omissions which impair a disabled person's "full enjoyment" of services or goods of a covered accommodation. 42 U.S.C. § 12182(a). Indeed, the statute expressly states that the denial of equal "participation" or the provision of "separate benefit[s]" are actionable under Title III. *See* 42 U.S.C. § 12182(b)(1)(A)."); *cf. Hindel v. Husted*, No. 2017 WL 432839, at *7 (S.D. Ohio Feb. 1, 2017) (granting a permanent injunction against the Ohio Secretary of State based on the accessibility of the state's website under Title II of the ADA and requiring accessibility); *Hindel v. Husted*, No. 17-3207 (6th Cir., Nov. 13, 2017) (defendant bears the burden of production and persuasion as to affirmative defenses such as fundamental alteration and subject matter of state election laws do not relieve defendant of these burdens); *Davis v. BMI/BNB Travelware company* No. CIVDS1504682 WL2935482 (Cal.Super. March 21, 2016) (granting motion for summary judgment for plaintiff and ordering that defendant's website be made WCAG 2.0 compliant and awarding Unruh damages in favor of plaintiff).

26.   Each of Defendant's violations of the ADA is likewise a violation of the UCRA. Indeed, the UCRA provides that any violation of the ADA constitutes a violation of

1 the UCRA. Cal. Civ. Code § 51(f).

2

## FACTUAL BACKGROUND

3   27. Defendant offers its commercial Website to the public.

4   28. The Website offers features which should allow all consumers to access the

5 goods and services offered in connection with its brick-and-mortar locations.

6   29. The Website provides consumers with access to an array of goods, services, and

7 information related to Defendant's brick-and-mortar locations which include, but are not

8 limited to, the following: merchandise descriptions and prices, size measurement guide,

9 company information, account sign-up, online purchase, career opportunities, store location

10 information, and many other benefits.

11   30. Based on information and belief, it is Defendant's policy and practice to deny

12 Plaintiff, along with other blind or visually-impaired users, access to Defendant's Website, and

13 to therefore specifically deny the goods and services that are offered and integrated with

14 Defendant's brick-and-mortar locations and otherwise.

15   31. Due to Defendant's failure and refusal to remove access barriers to its Website,

16 Plaintiff and visually-impaired persons have been and are still being denied equal access to

17 Defendant's brick-and-mortar locations and the numerous goods, services, privileges, and

18 benefits offered to the public through Defendant's Website.

19   32. Plaintiff cannot use a computer without the assistance of screen-reading

20 software.

21   33. However, Plaintiff is a proficient user of the JAWS screen-reader and uses it to

22 access the Internet.

23   34. Plaintiff has visited Defendant's Website on separate occasions using the

24 JAWS screen-reader.

25   35. While attempting to navigate the Website, Plaintiff encountered multiple

26 accessibility barriers for blind or visually-impaired people that include, but are not limited to:

27     a. The home page has graphics, links, and buttons that are not labeled or

28      are incorrectly labeled, or lack alternative text ("Alt-text"). Alt-text is

---

**COMPLAINT**

13

invisible code embedded beneath a graphical image on a website. Web accessibility requires that Alt-text be coded with each picture so that screen-reading software can speak the Alt-text where a sighted user sees pictures. Alt-text does not change the visual presentation, but instead a text box shows when the cursor moves over the picture. The lack of Alt-text on these graphics prevents screen-readers from accurately vocalizing a description of the graphics.

    b. Plaintiff encountered multiple unlabeled or mislabeled buttons and links. Without descriptive alternate text, Plaintiffs, and other screen-reader users, have no clue about the purpose or function of the button or link;

    c. Plaintiff encountered multiple pages containing insufficient navigational headings requiring Plaintiff to expend substantial additional time to access information;

    d. Plaintiff was unable to create an account or sign up for the email list because of an inaccessible signup system;

    e. Plaintiff was unable to browse products because product links and descriptions were inaccessible to screen reading technology;

    f. Plaintiff was unable to make a purchase because of an inaccessible checkout system.

36.     Due to the unlabeled buttons, lack of Alt-text, the structure of the headings and Website, cursor traps, and other barriers, Plaintiff was unable to fully and independently access the Website when visiting for the dual purpose of testing for compliance with the UCRA and ADA and to browse the products for gift options, sign up for an account, and find the nearest brick-and-mortar location.

37.     Since as early as October of 2019, and until the current date, during Plaintiff's separate visits to the Website, Plaintiff encountered multiple access barriers which denied Plaintiff full and equal access to the facilities, goods, and services offered to the public and

made available to the public on the Website.

38.     Due to the widespread access barriers Plaintiff encountered on the Website, Plaintiff has been deterred, on a regular basis, from accessing the Website.  Similarly, the access barriers Plaintiff encountered on the Website have deterred Plaintiff from visiting Defendant's brick-and-mortar locations.

39.     If the Website were equally accessible to all, Plaintiff could independently navigate the Website as sighted individuals do.

40.     Having attempted to use the Website, Plaintiff has actual knowledge of the access barriers that make these services inaccessible and independently unusable by blind and visually-impaired people.

41.     There are readily available, well established guidelines, available to Defendant on the Internet, for designing, constructing, and maintaining websites to be accessible to blind and visually-impaired persons. Other large business entities have used these guidelines, or have otherwise been able, to make their websites accessible, including but not limited to: adding Alt-text to graphics and ensuring that all functions can be performed using a keyboard. In addition, incorporating these basic changes and adding certain elements to Defendant's Website would not fundamentally alter the nature of Defendant's business nor would it result in an undue burden to Defendant. Because maintaining and providing a website where all functions can be performed using a keyboard would provide full, independent, and equal access to all consumers to the Website, Plaintiff alleges that Defendant has engaged in acts of discrimination including, but not limited to the following policies or practices:

   a.  Construction and maintenance of a website that is inaccessible to visually-impaired individuals, including Plaintiff;

   b.  Failure to construct and maintain a website that is sufficiently intuitive so as to be equally accessible to visually-impaired individuals, including Plaintiff; and,

   c.  Failure to take actions to correct these access barriers in the face of substantial harm and discrimination to blind and visually-impaired

consumers, such as Plaintiff, as a member of a protected class.

42.     Although Defendant may currently have centralized policies for maintenance and operation of the Website, Defendant lacks a plan and policy reasonably calculated to make its website fully and equally accessible to, and independently usable by, blind and other visually-impaired consumers, including Plaintiff.

43.     Without injunctive relief, Plaintiff and other visually-impaired consumers will continue to be unable to independently use Defendant's Website in violation of their rights.

## FIRST CAUSE OF ACTION

## VIOLATION OF THE UNRUH CIVIL RIGHTS ACT, CALIFORNIA CIVIL CODE § 51 *et seq.* [TAMARAMELLON.COM]

### (By Plaintiff Against All Defendants)

44.     Plaintiff re-alleges and incorporates by reference all paragraphs alleged above and each and every other paragraph in this Complaint necessary or helpful to state this cause of action as though fully set forth herein.

45.     California Civil Code § 51 *et seq.* guarantees equal access for people with disabilities to the accommodations, advantages, facilities, privileges, and services of all business establishments of any kind whatsoever. Defendant is systematically violating the UCRA, Civil Code § 51 *et seq.*

46.     Defendant's brick-and-mortar locations are "business establishments" within the meaning of the Civil Code § 51 *et seq.* Defendant generates revenue through its Website. Defendant's Website is a service provided by Defendant that is inaccessible to patrons who are blind or visually-impaired like Plaintiff. This inaccessibility denies blind and visually-impaired patrons full and equal access to the facilities, goods, and services that Defendant makes available to the non-disabled public. Defendant is violating the UCRA, Civil Code § 51 *et seq.*, by denying visually-impaired customers the goods and services provided on its Website. These violations are ongoing.

47.     Defendants' actions constitute intentional discrimination against Plaintiff on the basis of a disability, in violation of the UCRA, Civil Code § 51 *et seq.*, because of the

following: Defendant has constructed a website that is inaccessible to Plaintiff; Defendant maintains the Website in this inaccessible format; and, Defendant has failed to take action to correct and remove these barriers even after being on notice of the discrimination that such barriers cause to persons with Plaintiff's disability.

48.   Defendant is also violating the UCRA, Civil Code § 51 *et seq.* because the conduct alleged herein violates various provisions of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* as amended by the ADA Amendments Act of 2008 (P.L. 110-325), as set forth above.  Section 51(f) of the Civil Code provides that a violation of the right of any individual under the ADA also constitutes a violation of the UCRA.

49.   The actions of Defendant violate UCRA, Civil Code § 51 *et seq.*, and Plaintiff is therefore entitled to injunctive relief remedying the discrimination. Plaintiff expressly limits the cost of injunctive relief sought to $50,000 or less.

50.   Plaintiff is entitled to statutory minimum damages pursuant to Civil Code § 52 for each and every offense; however, Plaintiff hereby expressly limits the amount of money such that the total amount Plaintiff seeks to for each and every offense shall not exceed $24,999.00.

51.   Plaintiff is also entitled to reasonable attorneys' fees and costs.

## PRAYER

**WHEREFORE, Plaintiff prays for judgment against Defendant, as follows:**

1.  A Declaratory Judgment that at the commencement of this action Defendant owns, maintains, and/or operates its Website in a manner which discriminates against the blind, fails to provide access to blind or visually-impaired individuals, and that Defendant took no action that was reasonably calculated to ensure that its Website is fully accessible to, and independently usable by blind and visually-impaired individuals in violation of California's Unruh Act, California Civil Code § 51 , *et seq*;

2.  A preliminary and permanent injunction enjoining Defendant from further violations of the UCRA, Civil Code § 51 *et seq.* with respect to "tamaramellon.com."

3.  A preliminary and permanent injunction requiring Defendant to take the steps

necessary to make tamaramellon.com readily accessible to and usable by blind and visually-impaired individuals but Plaintiff hereby expressly limits the injunctive relief to require that Defendant expend no more than $50,000 thereon;

4.   Plaintiff seeks no relief related to any architectural barriers to access in this Complaint and expressly limits all claims to injunctive relief to modifications of Defendant's policies and procedures related to the Website;

5.   An award of statutory minimum statutory damages of not less than $4,000 per violation pursuant to § 52(a) of the California Civil Code;

6.   An additional award of $4,000.00 as deterrence damages for each violation pursuant to *Johnson v. Guedoir*, 218 F. Supp. 3d 1096; 2016 U.S. Dist. LEXIS 150740 (USDC Cal, E.D. 2016);

7.   For attorneys' fees and expenses pursuant to all applicable laws including, without limitation, Civil Code § 52(a);

8.   For pre-judgment interest to the extent permitted by law;

9.   For costs of suit; and,

10. For such other and further relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby respectfully requests a trial by jury on all appropriate issues raised in this Complaint.

Dated:   October 30, 2019          **MANNING LAW, APC**

By: _____
Joseph R. Manning Jr., Esq.
Attorney for Plaintiff

**COMPLAINT**
18

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF LOS ANGELES

Reserved for Clerk's File Stamp

COURTHOUSE ADDRESS:
Pomona Courthouse South
400 Civic Center Plaza, Pomona, CA 91766

PLAINTIFF:
Rebecca Castillo

DEFENDANT:
Tamara Mellon Brand, Inc., a Delaware corporation

**FILED**
Superior Court of California
County of Los Angeles

10/31/2019

Sherri R. Carter, Executive Officer / Clerk of Court

By: _____ Londie Olmos _____ Deputy

## NOTICE OF CASE MANAGEMENT CONFERENCE

CASE NUMBER:
19PSCV00979

TO THE PLAINTIFF(S)/ATTORNEY(S) FOR PLAINTIFF(S) OF RECORD:

You are ordered to serve this notice of hearing on all parties/attorneys of record forthwith, and meet and confer with all parties/attorneys of record about the matters to be discussed no later than 30 days before the Case Management Conference.

Your Case Management Conference has been scheduled at the courthouse address shown above on:

| Date: | Time: | Dept.: |
|-------|-------|--------|
| 03/26/2020 | 8:30 AM | J |

NOTICE TO DEFENDANT:   THE SETTING OF THE CASE MANAGEMENT CONFERENCE DOES NOT EXEMPT THE DEFENDANT  FROM FILING A RESPONSIVE PLEADING AS REQUIRED BY LAW.

Pursuant to California Rules of Court, rules 3.720-3.730, a completed Case Management Statement (Judicial Council form # CM-110) must be filed at least 15 calendar days prior to the Case Management Conference. The Case Management Statement may be filed jointly by all parties/attorneys of record or individually by each party/attorney of record. You must be familiar with the case and be fully prepared to participate effectively in the Case Management Conference.

At the Case Management Conference, the Court may make pretrial orders including the following, but not limited to, an order establishing a discovery schedule; an order referring the case to Alternative Dispute Resolution (ADR); an order reclassifying the case; an order setting subsequent conference and the trial date; or other orders to achieve the goals of the Trial Court Delay Reduction Act (Gov. Code, § 68600 et seq.)

Notice is hereby given that if you do not file the Case Management Statement or appear and effectively participate at the Case Management Conference, the Court may impose sanctions, pursuant to LASC, Local Rule 3.37, Code of Civil Procedure sections 177.5, 575.2, 583.150, 583.360 and 583.410, Government Code section 68608, subdivision (b), and California Rules of Court, rule 2.2 et seq.

Dated:  10/31/2019

_Gloria White-Brown / Judge_
Judicial Officer

---

## CERTIFICATE OF SERVICE

I, the below named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Notice of Case Management Conference upon each party or counsel named below:

☐ by depositing in the United States mail at the courthouse in  Pomona  , California, one copy of the original filed herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid.

☐ by personally giving the party notice upon filing of the complaint.

Joseph Richard Manning
20062 SW Birch St, Ste 200
Newport Beach, CA 92660

Sherri R. Carter, Executive Officer / Clerk of Court

Dated:  10/31/2019

By Londie Olmos
Deputy Clerk

LACIV 132 (Rev. 07/13)
LASC Approved 10-03
For Optional Use

## NOTICE OF
## CASE MANAGEMENT CONFERENCE

Cal. Rules of Court, rules 3.720-3.730
LASC Local Rules, Chapter Three

| **SUPERIOR COURT OF CALIFORNIA**<br>**COUNTY OF LOS ANGELES** | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Pomona Courthouse South<br>400 Civic Center Plaza, Pomona, CA 91766 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>**10/30/2019**<br>Sherri R. Carter, Executive Officer / Clerk of Court<br>By: ___Jacqueline Gonzalez___ Deputy |
| **NOTICE OF CASE ASSIGNMENT**<br><br>**UNLIMITED CIVIL CASE** | |

| Your case is assigned for all purposes to the judicial officer indicated below. | CASE NUMBER:<br>19PSCV00979 |
|---|---|

## THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

| | ASSIGNED JUDGE | DEPT | ROOM | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|
| ✔ | Gloria  White-Brown | J | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record

on _10/31/2019_
   (Date)

**Sherri R. Carter, Executive Officer / Clerk of Court**

By _Jacqueline Gonzalez_____, Deputy Clerk

LACIV 190 (Rev 6/18)
LASC Approved 05/06

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

### APPLICATION
The Division 7 Rules were effective January 1, 2007.  They apply to all general civil cases.

### PRIORITY OVER OTHER RULES
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE
A challenge under Code of Civil Procedure Section 170.6 must be made within **15 days** after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

### COMPLAINTS
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

### CROSS-COMPLAINTS
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed.  Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

### STATUS CONFERENCE
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint.  Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date.  All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference.  These matters may be heard and resolved at this conference.  At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

### SANCTIONS
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules.  Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction.  Careful reading and compliance with the actual Chapter Rules is imperative.**

### Class Actions
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

### *Provisionally Complex Cases
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status.  If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Joseph R. Manning, Jr.    SBN: 223381<br>Manning Law, APC<br>20062 SW BIRCH STREET, Suite 200, NEWPORT BEACH, CA 92660-8860<br>TELEPHONE NO.: 949-200-8755    FAX NO.: 866-843-8308<br>ATTORNEY FOR *(Name):* Rebecca Castillo | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** LOS ANGELES
STREET ADDRESS: 400 Civic Center Plaza
MAILING ADDRESS: 400 Civic Center Plaza
CITY AND ZIP CODE: Pomona, 91766
BRANCH NAME: Pomona

CASE NAME: Rebecca Castillo v. Tamara Mellon Brand, Inc., et al.

| **CIVIL CASE COVER SHEET** | **Complex Case Designation** | CASE NUMBER: |
|---|---|---|
| [X] Unlimited     [ ] Limited<br>(Amount         (Amount<br>demanded       demanded is<br>exceeds $25,000)  $25,000 or less) | [ ] Counter   [ ] Joinder<br><br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br><br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

| **Auto Tort** | **Contract** | **Provisionally Complex Civil Litigation** |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | (Cal. Rules of Court, rules 3.400–3.403) |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Antitrust/Trade regulation (03) |
| **Other PI/PD/WD (Personal Injury/Property** | [ ] Other collections (09) | [ ] Construction defect (10) |
| **Damage/Wrongful Death) Tort** | [ ] Insurance coverage (18) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | [ ] Other contract (37) | [ ] Securities litigation (28) |
| [ ] Product liability (24) | **Real Property** | [ ] Environmental/Toxic tort (30) |
| [ ] Medical malpractice (45) | [ ] Eminent domain/Inverse | [ ] Insurance coverage claims arising from the |
| [ ] Other PI/PD/WD (23) | condemnation (14) | above listed provisionally complex case |
| **Non-PI/PD/WD (Other) Tort** | [ ] Wrongful eviction (33) | types (41) |
| [ ] Business tort/unfair business practice (07) | [ ] Other real property (26) | **Enforcement of Judgment** |
| [X] Civil rights (08) | **Unlawful Detainer** | [ ] Enforcement of judgment (20) |
| [ ] Defamation (13) | [ ] Commercial (31) | **Miscellaneous Civil Complaint** |
| [ ] Fraud (16) | [ ] Residential (32) | [ ] RICO (27) |
| [ ] Intellectual property (19) | [ ] Drugs (38) | [ ] Other complaint *(not specified above)* (42) |
| [ ] Professional negligence (25) | **Judicial Review** | **Miscellaneous Civil Petition** |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | [ ] Partnership and corporate governance (21) |
| **Employment** | [ ] Petition re: arbitration award (11) | [ ] Other petition *(not specified above)* (43) |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [ ] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [ ] is   [X] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties   d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel   e. [ ] Coordination with related actions pending in one or more courts
         issues that will be time-consuming to resolve           in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [X] monetary   b. [X] nonmonetary; declaratory or injunctive relief   c. [ ] punitive
4. Number of causes of action *(specify):* 1; ONE
5. This case [ ] is   [x] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 10/30/2019

Joseph R. Manning, Jr
_____
(TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
*www.courtinfo.ca.gov*
Westlaw Doc & Form Builder™

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
   Damage/Wrongful Death
Uninsured Motorist (46) *(if the*
   *case involves an uninsured*
   *motorist claim subject to*
   *arbitration, check this item*
   *instead of Auto)*
**Other PI/PD/WD (Personal Injury/**
**Property Damage/Wrongful Death)**
**Tort**
Asbestos (04)
   Asbestos Property Damage
   Asbestos Personal Injury/
      Wrongful Death
Product Liability *(not asbestos or*
   *toxic/environmental)* (24)
Medical Malpractice (45)
   Medical Malpractice–
      Physicians & Surgeons
   Other Professional Health Care
      Malpractice
Other PI/PD/WD (23)
   Premises Liability (e.g., slip
      and fall)
   Intentional Bodily Injury/PD/WD
      (e.g., assault, vandalism)
   Intentional Infliction of
      Emotional Distress
   Negligent Infliction of
      Emotional Distress
   Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
   Practice (07)
Civil Rights (e.g., discrimination,
   false arrest) *(not civil*
   *harassment)* (08)
Defamation (e.g., slander, libel)
   (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
   Legal Malpractice
   Other Professional Malpractice
      *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
   Breach of Rental/Lease
      Contract *(not unlawful detainer*
      *or wrongful eviction)*
   Contract/Warranty Breach–Seller
      Plaintiff *(not fraud or negligence)*
   Negligent Breach of Contract/
      Warranty
   Other Breach of Contract/Warranty
Collections (e.g., money owed, open
   book accounts) (09)
   Collection Case–Seller Plaintiff
   Other Promissory Note/Collections
      Case
Insurance Coverage *(not provisionally*
   *complex)* (18)
   Auto Subrogation
   Other Coverage
Other Contract (37)
   Contractual Fraud
   Other Contract Dispute
**Real Property**
Eminent Domain/Inverse
   Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
   Writ of Possession of Real Property
   Mortgage Foreclosure
   Quiet Title
   Other Real Property *(not eminent*
      *domain, landlord/tenant, or*
      *foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal*
   *drugs, check this item; otherwise,*
   *report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
   Writ–Administrative Mandamus
   Writ–Mandamus on Limited Court
      Case Matter
   Writ–Other Limited Court Case
      Review
Other Judicial Review (39)
   Review of Health Officer Order
   Notice of Appeal–Labor
      Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.**
**Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
   *(arising from provisionally complex*
   *case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
   Abstract of Judgment (Out of
      County)
   Confession of Judgment *(non-*
      *domestic relations)*
   Sister State Judgment
   Administrative Agency Award
      *(not unpaid taxes)*
   Petition/Certification of Entry of
      Judgment on Unpaid Taxes
   Other Enforcement of Judgment
      Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified*
   *above)* (42)
   Declaratory Relief Only
   Injunctive Relief Only *(non-*
      *harassment)*
   Mechanics Lien
   Other Commercial Complaint
      Case *(non-tort/non-complex)*
   Other Civil Complaint
      *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate
   Governance (21)
Other Petition *(not specified*
   *above)* (43)
   Civil Harassment
   Workplace Violence
   Elder/Dependent Adult
      Abuse
   Election Contest
   Petition for Name Change
   Petition for Relief From Late
      Claim
   Other Civil Petition

CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Page 2 of 2

| SHORT TITLE: Rebecca Castillo v. Tamara Mellon Brand, Inc., et al. | CASE NUMBER |
|---|---|

# CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court.**

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

### Applicable Reasons for Choosing Court Filing Location (Column C)

1. Class actions must be filed in the Stanley Mosk Courthouse, Central District.
2. Permissive filing in central district.
3. Location where cause of action arose.
4. Mandatory personal injury filing in North District.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.

7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.
11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection, or personal injury).

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C**<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1, 4, 11 |
| **Other Personal Injury/Property Damage/Wrongful Death Tort** | Asbestos (04) | ☐ A6070  Asbestos Property Damage<br>☐ A7221  Asbestos - Personal Injury/Wrongful Death | 1, 11<br>1, 11 |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1, 4, 11 |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons<br>☐ A7240  Other Professional Health Care Malpractice | 1, 4, 11<br>1, 4, 11 |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250  Premises Liability (e.g., slip and fall)<br>☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.)<br>☐ A7270  Intentional Infliction of Emotional Distress<br>☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1, 4, 11<br>1, 4, 11<br><br>1, 4, 11<br>1, 4, 11 |

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

| SHORT TITLE: Rebecca Castillo v. Tamara Mellon Brand, Inc., et al. | CASE NUMBER |
|---|---|

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C** Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Non-Personal Injury/Property Damage/Wrongful Death Tort** | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☑ A6005  Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1, 2, 3 |
| | | A6050  Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1, 2, 3 |
| | | A6109  Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ A6008  Contract/Warranty Breach –Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1, 2, 5 |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 5, 6, 11 |
| | | ☐ A6012  Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ A6034  Collections Case-Purchased Debt (Charged Off Consumer Debt Purchased on or after January 1, 2014) | 5, 6, 11 |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1, 2, 5, 8 |
| | Other Contract (37) | ☐ A6009  Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ A6031  Tortious Interference | 1, 2, 3, 5 |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation       Number of parcels_____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2, 6 |
| | | ☐ A6032  Quiet Title | 2, 6 |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2, 6, 11 |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2, 6, 11 |

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

| SHORT TITLE: Rebecca Castillo v. Tamara Mellon Brand, Inc., et al. | CASE NUMBER |
|---|---|

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C** Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus | 2, 8 |
| | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2 |
| | | ☐ A6153  Writ - Other Limited Court Case Review | 2 |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1, 2, 8 |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort<br>Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims<br>from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement<br>of Judgment (20) | ☐ A6141  Sister State Judgment | 2, 5, 11 |
| | | ☐ A6160  Abstract of Judgment | 2, 6 |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2, 9 |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2, 8 |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints<br>(Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1, 2, 8 |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1, 2, 8 |
| | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation<br>Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2, 8 |
| | Other Petitions (Not<br>Specified Above) (43) | ☐ A6121  Civil Harassment With Damages | 2, 3, 9 |
| | | ☐ A6123  Workplace Harassment With Damages | 2, 3, 9 |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case With Damages | 2, 3, 9 |
| | | ☐ A6190  Election Contest | 2 |
| | | ☐ A6110  Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2, 3, 8 |
| | | ☐ A6100  Other Civil Petition | 2, 9 |

LASC CIV 109 Rev. 12/18
For Mandatory Use

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 3 of 4

| SHORT TITLE: Rebecca Castillo v. Tamara Mellon Brand, Inc., et al. | CASE NUMBER |
|---|---|

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address which is the basis for the filing location, including zip code. (No address required for class action cases).

| REASON: <br> ☒ 1. ☒ 2. ☒ 3. ☐ 4. ☐ 5. ☐ 6. ☐ 7. ☐ 8. ☐ 9. ☐ 10. ☐ 11. | ADDRESS: <br> 1008 East Merced Avenue |
|---|---|
| CITY: West Covina | STATE: Ca | ZIP CODE: 91790 | |

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the __East__ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., §392 et seq., and Local Rule 2.3(a)(1)(E)].

Dated: 10/30/2019

(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.
2. If filing a Complaint, a completed Summons form for issuance by the Clerk.
3. Civil Case Cover Sheet, Judicial Council form CM-010.
4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 02/16).
5. Payment in full of the filing fee, unless there is court order for waiver, partial or scheduled payments.
6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.
7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.